UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASSAN ALAME,

                Plaintiff,

v.

MARIE SMETKA, et.al.,

                Defendants.

                                           /

No. 08-10777

District Judge Avern Cohn

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Before this Court is Defendant Marie Smetka and Alfred Williams' June 11, 2008 *Motion for Summary Judgment* [Docket #11], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendants' motion be GRANTED IN PART AND DENIED IN PART. Specifically, I recommend that the motion be GRANTED on the basis of qualified immunity as to claims against Defendants in their personal capacities, but DENIED as to claims against them in their official capacities.

**I.  FACTUAL BACKGROUND**

On February 25, 2008, Plaintiff, a Michigan Department of Corrections ("MDOC") inmate currently housed at the Gus Harrison Correctional Facility ("ARF"), filed the present action pursuant to 42 U.S.C. § 1983, alleging First Amendment violations. The Complaint alleges that on September 17, 2007, Defendant Smetka, a Mailroom Supervisor, issued a "mail rejection notice" regarding a book and letter in the Arabic language addressed to Plaintiff. *Complaint* at 3. The same day, Defendant Williams, a Resident Unit Manager

("RUM") informed Plaintiff that "he would need two [] days to secure a translator." *Id.* On September 20, 2007, Defendant Williams held an administrative hearing, upholding the original decision to reject the material, and informing Plaintiff that the book and letter would be destroyed within 30 days. *Id.* As a result, Defendant Williams, contradicting his earlier position, told Plaintiff "that there would be no translation of the confiscated materials." *Id.* Plaintiff alleges that subsequent to the hearing, the letter and book were destroyed by the MDOC. *Id.* Plaintiff "challenge[s] the Michigan Department of Corrections Policy Directive's decision to confiscate and destroy the book and letter solely because it was written in the Arabic language."[1] *Id.* Plaintiff seeks compensatory, punitive, and declarative relief against Defendants in their personal and official capacities.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary

---

[1] Plaintiff's response to the present motion acknowledges that "the book was not allowed as it did not come directly from an authorized vendor," apparently withdrawing his claim regarding the facility's refusal to approve the book. *Plaintiff's Response, Docket #14* at 5.

judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

#### A. Official Capacity Claims

Defendants argue that monetary claims against them in their official capacity, construed as claims against the State of Michigan, are barred by Eleventh Amendment immunity. *Defendants' Brief* at 12. Defendants, noting "an exception to Eleventh Amendment immunity for certain types of prospective injunctive relief," argue that Plaintiff's request for "a declaration that his rights were violated" accompanying his claim for monetary damages, "does not warrant abrogation of Michigan's sovereign immunity to end a

continuing violation of federal law." *Id.*

Generally, claims against defendants in their official capacities, *i.e*, in their capacity as agents of the state under 42 U.S.C. §1983, are subject to dismissal on the basis that "[t]he United States Supreme Court has specifically held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Price v. Caruso,* 451 F.Supp.2d 889, 902 (E.D.Mich.2006)(Friedman, J.); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Nonetheless, "immunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005); *Ex parte Young,* 209 U.S. 123, 155-56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Further, official capacity claims do not falter on a defendant's lack of personal involvement. "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1245 (6th 1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

### 1. The Pro Se Complaint is Construed as a Request for Injunctive Relief

In regard to injunctive claims, the Complaint's prayer for relief asks for only a declaration "that the actions of the Defendants" were a violation of First Amendment rights. *Complaint* at 4. Nonetheless, within the body of the Complaint, Plaintiff "challenge[s] the Michigan Department of Corrections Policy Directive's decision to confiscate and destroy the . . . letter solely because it was written in the Arabic language." *Id.* at 3. Because Plaintiff claims that the Policy Directive (on its face or as applied by Defendants) amounts to a continuing constitutional violation, I construe the claim to include a request for

prospective injunctive relief.[2]

## 2. General Principles

"A prisoner's right to receive mail is subject to prison policies and regulations that are Regulations that govern and restrict a prisoner's First Amendment rights must be "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). These interests include "security, good order, or discipline of the institution." *Thornburgh v. Abbott,* 490 U.S. 401, 404, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). *See also Harbin-Bey v. Rutter* 420 F.3d 571, 578 (6th Cir. 2005). "[I]t is clear that incarceration does not strip inmates of all constitutional protections." *Thompson v. Campbell,* 81 Fed.Appx. 563, 567 (6th Cir.2003)(internal citations omitted). However, because "the federal judiciary is particularly ill equipped to deal with the complex and intractable problems of prison administration, we generally defer to the judgments of prison officials in upholding regulations." *Id*. *See also Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003) ("[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped").

## 3. MDOC Policy Directive 05.03.118(HH)(18) is Facially Valid

The Policy Directive at issue, PD 05.03.118, *Prisoner Mail* states in relevant part:

"HH. Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner and therefore should be rejected [including] (18) [m]ail written in code, or in a foreign language that cannot be interpreted by institutional staff to the extent

---

[2]The pleadings of a *pro se* litigant are to be liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

necessary to conduct an effective search. If facility staff are not available, the facility head may authorize the use of a reliable interpreter. Prisoners shall not be used as interpreters."

Pursuant to *Turner, supra*, the Policy Directive is appraised at a deferential level of scrutiny. Its reasonableness is assessed with attention to four factors: (1) "whether the restriction bears a 'valid, rational connection' to the 'legitimate governmental interest put forward to justify it,' such that the "asserted goal is not so remote as to render the policy arbitrary or irrational," *Amatel v. Reno,* 156 F.3d 192, 194, 332 U.S.App.D.C. 191, 193 (D.C. Circuit 1998); *Turner,* 482 U.S. at 89-90; (2) "whether inmates retain alternative means of exercising the circumscribed right," *id.* at 90; (3) the court must consider "the costs that accommodating the right imposes on other inmates, guards, and prison resources, *Amatel* at 194"; and (4) whether there are alternatives to the regulation that 'fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.'" *Turner* at 90-91.

The Policy Directive satisfies the first *Turner* prong. Because passing on untranslated material to inmates would be tantamount to no screening whatsoever, the Policy Directive bears a rational connection to the legitimate penological interest of banning material posing a threat to prison security.[3] Further, instead of rejecting non-English correspondence outright, the P.D. permits the facility to authorize the use of a reliable interpreter. *Compare Kikumura v. Turner,* 28 F.3d 592, 598 (7th Cir. 1994)(*citing Thornburgh*, 490 U.S. at 416, 109 S.Ct. at 1883)(Warden's ban on Japanese language material on the sole basis that it could

---

[3]Plaintiff notes that he "is free to speak Arabic on the prison yard, in the prisoner housing unit, on the the monitored prison telephone, on visits with friends and family, and is free to prepare and retain in his personal possession any personal writings in Arabic," noting that "[a]t all times, [he] is monitored by prison staff and/or guards, none of whom speak, write, or understand Arabic." *Plaintiff's Response* at 6. However, Plaintiff's implied argument that MDOC policy inconsistencies regarding non-English communication (not presently before the Court) entitle him to receive unscreened mail is unsupported by case law. *See Harbin-Bey, supra,* 420 F.3d at 578 (6th Cir. 2005)

not be "monitored or reviewed by institution staff," thereby skirting the "individualized nature of the determinations required by the regulation," did not meet the first prong of *Turner*).   Further, because the MDOC Directive, as stated, applies equally to all writings incomprehensible to mailroom staff, *i.e.,* coded or non-English writings, it is content neutral. "Where 'prison administrators draw distinctions between' types of incoming mail 'solely on the basis of their potential implications for prison security' . . . the practice is deemed to be 'neutral.'" *Spitsyn v. Morgan* L 714095 at *4(W.D.Wash.2008)(*citing Thornburgh* at 415-16).

The second *Turner* prong, which asks "whether inmates retain alternative means" of exercising the right to receive information, is likewise satisfied.   *Amatel,* 156 F.3d at 194; *Turner,* at 90, 107 S.Ct. 2254.   Because the P.D. allows for the use of an interpreter at the facility head's discretion, a non-English speaking inmate's right to receive mail is not entirely foreclosed by the MDOC's written policy.  Finally, as to the third *Turner* factor (cost of accommodating the right) and the fourth (readily available alternatives), the P.D.'s contemplation of the discretionary use of interpreters  addresses both the cost and "available alternative" factors.[4]

### 4.  A Question of Fact Exists as to Whether the Policy Directive as Applied Violates Plaintiff's Right to Receive Mail

While the Directive itself does not on its face amount to an impermissible restriction on  inmates' right to receive mail, a question of fact remains as whether it is being unconstitutionally applied to Plaintiff.

A constitutional challenge to a prison regulation may be brought facially or as applied.

---

[4] The fourth prong of *Turner* is not a "least restrictive alternative" test.  *See Overton v. Bazzetta, supra*, 539 U.S. at 136.  There does not appear to be a "ready alternative" to either in-house or outside translation that "undermines the reasonableness of the regulation."  *Id*.

*Flagner v. Wilkinson*, 241 F.3d 475, 484, n. 5 (6th Cir. 2001) ("Under *Turner*, [a] plaintiff may pursue as-applied challenges to facially valid prison regulations") (citations omitted). In *Figel v. Overton*, 121 Fed.Appx. 642 (6th Cir. 2005), for example, the MDOC confiscated a religious book sent to the plaintiff by the Philadelphia Church of God ("PCG"), based on a prison regulation prohibiting inmates from receiving books that are not sent directly from the publisher or an authorized vendor. While the regulation was facially valid, the Sixth Circuit permitted the plaintiff to bring a First Amendment challenge as applied, stating:

> "Thus, the First Amendment issue in this case is not whether Directive 05.03.118 is reasonably related to a legitimate penological interest, as the district court perceived it to be. Rather, it is whether Defendants' refusal to authorize PCG as a vendor is reasonably related to a legitimate penological interest." *Id.* at 646.

Similarly in the present case, the issue is whether the Defendants' refusal to obtain an interpreter for letters written in Arabic is reasonably related to a legitimate penological interest. Defendants acknowledge that Plaintiff's request for a translation of the letter was denied. *Defendants' Brief* at 7. While the P.D. states that "[i]f facility staff are not available, the facility head *may* authorize the use of a reliable interpreter" (emphasis added), indicating that the decision to engage an interpreter is discretionary, Defendants offer no reason why Plaintiff's request was denied. Moreover, Defendants have failed to provide any of the factors used by the MDOC in determining whether the use of a translator is appropriate.

In the absence of information regarding the denial of Plaintiff's request and the MDOC's protocol for approving certain translations and denying others, many unanswered questions remain, making a *Turner* analysis impossible. Of course, of most concern is whether the P.D., as applied, authorizes the use of translators so parsimoniously as to create a *de facto* ban on non-English writings. Although not addressed by this Circuit, the Seventh

-8-

Circuit has found that the "summary exclusion of foreign language material is unconstitutional." *Kikumura*, *supra*, 28 F.3d at 598. What percentage of translation requests are accommodated by the MDOC? Are requests for Arabic translations approved at a lower rate than other non-English languages? If so, applying the third *Turner* factor, is the lower approval rate the result of cost factors or a scarcity of Arabic (as opposed to say, Spanish) interpreters, or does it stem from an impermissible purpose, such as ethnic prejudice? In the present case, did the Defendants even try to get an Arabic interpreter, and if not, why not? Or, applying the fourth prong of *Turner,* does the decision to deny or approve a translator's services depend upon the inmate's proficiency in English?

Given the present dearth of information, the ultimate question remains as to whether the P.D. is arbitrarily applied pursuant to *Turner*, or constitutes a denial of Plaintiff's constitutional rights. *See Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994)(refusal to authorize translations of the plaintiff's incoming letters from Lao to English while excepting incoming German and Spanish correspondence from the prison's "English only" rule violated his First Amendment and equal protection rights). Plaintiff is thus faced with the dilemma described in *Figel v. Overton, supra*, at 646, fn. 2:

> "We note that while the burden is on the prisoner to disprove the validity of the regulation at issue, *Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), Defendants must still articulate their interest in the regulation. *See Turner,* 482 U.S. at 89. In *Overton,* for example, the Michigan Department of Corrections expressed several interests in the challenged regulations. *Overton,* 539 U.S. at 133. *Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue*." (Emphasis added).

Given the many questions of material fact that remain, Defendants in their official capacities are not entitled to summary judgment on Plaintiff's "as applied" challenge to the

Policy Directive.

## B.  Personal Capacity Claims

Defendants argue that personal capacity claims against them should be dismissed on the basis of qualified immunity.[5] *Defendants' Brief* at 9-10.  Citing *Kikimura, supra,* 28 F3d at 596-597, they contend that even assuming that the failure to translate the non-English correspondence amounts to a constitutional violation, the absence of Supreme Court or Sixth Circuit case law "analyzing an inmate's constitutional right to receive mail written in a foreign language that prison staff cannot translate," indicates that the right is not clearly established. *Defendants' Brief* at 10.

Qualified immunity is an affirmative defense.  Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful.[6] Under *Saucier*, the inquiry is sequential, that is, the district court must first consider whether there was a constitutional violation.[7]  *See also Baranski v. Fifteen Unknown Agents of the BATF,* 452

---

[5] Qualified immunity is a defense only available to individual defendants, not to a state or municipality, or defendants sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

[6]The Sixth Circuit's qualified immunity analysis uses a *three*-pronged test, breaking the second *Saucier* requirement into two parts: "(1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances." *Harris v. Bornhorst,* 513 F.3d 503, 511 (6th Cir. 2008)

[7] The Supreme Court has granted certiorari in *Pearson v. Callahan*,__S.Ct.__, 2008 WL 754340, directing the parties to brief and argue whether *Saucier* should be overruled.

F.3d 433, 438 (6th Cir.2006) (en banc). When "the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury," the "jury becomes the final arbiter of [a] claim of immunity." *Brandenburg v. Cureton,* 882 F.2d 211, 215-16 (6th Cir.1989); *Bouggess v. Mattingly* 482 F.3d 886, 888 (6th Cir. 2007).

As discussed in Section **A.**, *supra*, a question of fact remains as to whether the P.D. is unconstitutional as applied. Nevertheless, Defendants are entitled to qualified immunity under the second prong of *Saucier*, because the right to translations of Plaintiff's incoming correspondence was not "clearly established." An official is immune from suit "even when his action violates constitutional rights, unless 'the right is so clearly established that a reasonable official would understand that what he was doing violates that right.'" *Nader v. Blackwell,* 545 F.3d 459, 476 (6th Cir. 2008)(*citing Cooper v. Parrish,* 203 F.3d 937, 951 (6th Cir.2000)). "[O]fficials who act in ways they reasonably believe to be lawful . . . should not be held personally liable.'" *Id.* (*citing Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

In the absence of either Supreme Court or Sixth Circuit case law establishing the right to the translation of non-English correspondence, Defendants are entitled to qualified immunity. The Seventh Circuit's holding in *Kikimura, supra*, is applicable here: "Whatever we might think about the constitutionality of the warden's policy as an initial matter . . . it surely is not 'clearly established' that [he] violated Kikimura's constitutional rights." 28 F3d at 596-97. The *Kikimura* court, noting one Tenth Circuit decision regarding non-English mail, found nonetheless that "we do not think we can declare a matter 'clearly established' based on the existence of one case from anther circuit." *Id.* The same reasoning applies to the present case.

## IV.  CONCLUSION

For these reasons, I recommend that Defendants' motion be GRANTED on the basis of qualified immunity as to claims against them in their personal capacities, but DENIED as to claims against them in their official capacities.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                               S/R. Steven Whalen
                                               R. STEVEN WHALEN
                                               UNITED STATES MAGISTRATE JUDGE

Dated:  December 30, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 30, 2008.

 

S/G. Wilson
Judicial Assistant